# EXHIBIT A

Case 1:24-cv-04309-JHR    Document 1-1    Filed 06/06/24    Page 2 of 49

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MUTTI USA, INC.,

                Plaintiff,

     v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

               Defendant.

Index No.:
Date Purchased:

**SUMMONS**

The basis of the venue is that it was contractually agreed upon by the parties.

**TO THE ABOVE-NAMED DEFENDANT:**

    ***YOU ARE HEREBY SUMMONED*** to answer the Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this summons, to serve a notice of appearance, on the plaintiffs' attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated:  New York, New York
       May 9, 2024

          **PASICH LLP**

       By:     /s/ Jeffrey L. Schulman
          Jeffrey L. Schulman
          286 Madison Avenue, 12th Floor
          New York, New York 10017
          Telephone:  (212) 686-5000
          JSchulman@PasichLLP.com

          *Attorneys for Plaintiff*

**Defendant's Address:**

Westchester Surplus Lines Insurance Company
11575 Great Oaks Way, Suite 200
Alpharetta, GA 30022

Case 1:24-cv-04309-JHR   Document 1-1   Filed 06/06/24   Page 4 of 49

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

MUTTI USA, INC.,

          Plaintiff,

   v.

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

        Defendant.

---

Index No.:

**VERIFIED COMPLAINT**

Plaintiff, Mutti USA, Inc. ("Mutti") complains of Defendant Westchester Surplus Lines Insurance Company ("Westchester"), and alleges as follows:

## NATURE OF THIS LAWSUIT

1.    This is a lawsuit by Mutti to collect promised insurance coverage under a Recall Plus, Consumable Products Policy issued by Westchester. Contrary to the terms of the policy, the facts, and the law, Westchester wrongfully denied coverage to Mutti. As a result of Westchester's breaches, Mutti has been forced to incur substantial costs that Westchester should have paid and is now forced to bring this lawsuit to obtain the benefits promised under the policy.

## PARTIES

2.    Mutti is a domestic business organized and existing under the laws of the State of Connecticut.

3.    Mutti is informed and believes, and on that basis alleges, that Westchester is a foreign insurer incorporated under the laws of the state of Georgia

doing business in the state of Oklahoma, with its principal place of business in Roswell, Georgia.

4.     Mutti is informed and believes, and on that basis alleges, that Westchester is a part of the Chubb Group of Insurance Companies, a group of separately organized insurance companies that are subsidiaries of the Chubb Corporation. Chubb states on its website:

> The insurance claims process can sometimes be, well, a process. At Chubb, it's different. That's because we're not just in the insurance business, we're in the people business. Our experienced claims specialists are relentless about every detail in the most personal way possible. Whether you have a business, homeowners or auto policy, it's our policy to make your life easier.[1]

## JURISDICTION AND VENUE

5.     This matter falls within this Court's general jurisdiction under Judiciary Law section 140-b.

6.     This Court has personal jurisdiction over Westchester pursuant to C.P.L.R. §§ 301 and 302.

7.     Venue is proper under C.P.L.R. § 503 because the parties contractually agreed in the Policy, that "any and all disputes regarding any claim or 'loss' will be brought and litigated in the State of New York" and "will be governed by the laws of the State of New York.

---

[1] https://www.chubb.com/us-en/claims.html.

2

## **THE POLICY**

8. Westchester sold Mutti a Recall Plus, Consumable Products policy identified by Policy No. G74431860 001, for the period February 18, 2023 through February 18, 2024 ("Policy"). A copy of the Policy is attached as Exhibit A and incorporated by reference.

9. The Policy provides $500,000 in coverage for "each insured event." Ex. A, Decl. Item 4.

10. The Policy obligates Westchester to "reimburse" Mutti for all "'Loss' to which this insurance applies, in excess of the applicable 'self-insured retention' . . . that is caused by an 'insured event' during the 'policy period[.]'" *Id*. Section I.

11. "Loss" is defined to include "recall costs" which is defined to include "costs and expenses listed below incurred by you or your retailers or other third parties to recover, withdraw or recall such affected 'insured product(s)' because of an 'insured event.'" *Id*. Section II(J), M.

12. Covered "costs and expenses" include "[t]he cost of removing 'adulterated' 'insured product(s)' from stores, shelves and other public access, or from 'stock.'" *Id*.

13. "Loss" is further defined to include "consequential damages" and "defense costs." *Id*. Consequential Damages End.

14. "Loss" is further defined to include "extra expense" and "business interruption." *Id*. Extra Expense and Business Interruption Ends.

15. "Loss" is further defined to include "replacement costs." *Id*. Replacement Costs End.

3

16.     "Loss" is further defined to include "brand rehabilitation expenses." *Id*. Brand Rehabilitation Expenses End.

17.     "Adulterated" is defined to include "contaminated or impaired by a microbiological, chemical or physical hazard[.]" *Id*. Section II(A).

18.     "Insured Event" is defined to include "discovery of an 'adulterated' 'insured product(s)' that causes a voluntary or involuntary recall, market withdrawal, or 'stock' recovery . . . provided that the consumption, exposure to, or use of such 'insured product(s)' has resulted in or would result in 'bodily injury' or 'property damage.'" *Id*. Section II(H).

19.     Insured Event is further defined to include "adverse publicity" which is defined to include "the naming of the 'insured product(s)' in any . . . media, including, but not limited to an governmental publication, during the 'policy period,' with the implication that the 'insured products(s)' is 'adulterated' and that consumption, exposure to, or use of such 'insured product(s)' has resulted in or would result in 'bodily injury' or 'property damage.'" *Id*. Adverse Publicity Coverage End.

## WESTCHESTER'S WRONGFUL DENIAL OF MUTTI'S CLAIM

20.     In or around January 2024, Mutti initiated a product withdrawal of certain lots of crushed tomato product due to reports and complaints about the detachment of the internal coating of the lower lid inside the cans ("Product").

21.     Mutti promptly and timely notified Westchester of its claim for coverage under the Policy ("Claim").

4

22.   In or around March 2023, Eviosys, the third-party manufacturer of the cans confirmed that "[o]ccasionally pieces of internal coating may detach from the metal."

23.   On or about January 25, 2024, the Food and Drug Administration ("FDA") confirmed a Class II recall of the Product, because "internal can lining is detaching from can into product."

24.   The FDA's Class II classification is used in instances where a product "may cause" bodily injury.

25.   On or about January 30, 2024, Mutti issued a Notice of Voluntary Product Recall.

26.   On or about March 27, 2024, Westchester denied Mutti's Claim.

27.   Westchester appended a March 26, 2024, report from RD Food Safety Consulting ("RD") to its denial letter.

28.   RD was purportedly retained by Westchester and deduced the following from the Eviosys report: (i) the Plastic Lining "does not pose a choking hazard" because "big pieces would be noticed and product is thin and flexible" and (ii) ingestion "at worst could cause a transient irritation but would not block the airway."

29.   However, RD concluded that, "[c]an lining flakes have a potential to cause choking or a minor injury to gums or other tissues during chewing and swallowing."

30.   RD did not conclude that choking could not occur.  RD concluded that "the potential for choking is remote."

5

31. RD conceded that the Plastic Lining was "obviously noticeable to consumers based on the large number of complaints and the issue could affect brand recognition."

32. RD conceded that the FDA's Class II designation is used in "a situation in which use of or exposure to a violative product may cause temporary or medically reversible adverse heal consequences or where the probability of serios adverse health consequences is remote."

33. Ultimately, RD concluded and agreed that "[t]he potential for an adverse health consequence from swallowing and ingesting the [Plastic Lining] is possible[.]"

34. In its denial letter, Westchester "concedes that Mutti's claim involves an 'insured product' and a 'voluntary recall' as required by" the Policy.

35. However, Westchester denied coverage on the ground that the Plastic Lining "has not resulted in and would not result in 'bodily injury.'"

36. Mutti provided Westchester with case law establishing that the grounds for its denial were contrary to governing law.

37. Reasonable interpretations of the Policy's requirement that an event "would result in 'bodily injury'" include "whether the food is safe for human consumption;" whether the condition "is likely to cause" bodily injury; or whether there is a "reasonable probability" that bodily injury will occur.

38. The Product was recalled because it was not fit for human consumption and given the reasonable probability that consuming the Product would result in bodily injury.

6

39. Westchester responded simply by saying: "the case law states what the case law states."

40. To the extent not waived or excused, Mutti complied with the provisions in the Policy. Thus, Mutti is entitled to all benefits of insurance provided by the Policy.

## FIRST CAUSE OF ACTION
**(Breach of Contract)**

41. Mutti repeats, realleges and incorporates by reference the allegations of paragraphs 1 through 40 above.

42. Mutti performed all obligations required of it under the Policy, except as otherwise excused.

43. Westchester breached its duties under the Policy by acting as alleged above, including failing to adjust Mutti's claim for coverage, and denying the Claim under the Policy in its entirety.

44. As a direct and proximate result of Westchester's breaches, Mutti sustained, and continues to sustain damages, in an amount to be proven at trial.

45. Mutti also incurred and continues to incur consequential damages – including, but not limited to, ongoing extra expenses and attorneys' fees because of Westchester's wrongful, unjustified and unreasonable refusal to issue payment of amounts due, and improper treatment of the Claim, all with the result of wrongfully diverting Mutti from its recovery efforts.

46. The consequential damages resulting from Westchester's conduct and its breaches of the duty to act in good faith were within the contemplation of the

7

parties when the Policy was sold, as the natural and probable result of a breach of the Policy.

47.     The consequential damages resulting from Westchester's conduct and its breaches of its duty to act in good faith were foreseen or should have been foreseen when the Policy was sold.

48.     Mutti's damages were foreseeable given the purpose and particular circumstances of the Policy.

49.     As a result of Westchester's breaches, Mutti requests entry of judgment for breach of contract, awarding payment of damages in an amount equal to the amount owed under the Policy and consequential damages, each in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

50.     Mutti repeats, realleges and incorporates by reference the allegations of paragraphs 1 through 49 above.

51.     A controversy exists between Mutti and Westchester as to Westchester's duties and obligations under the terms of the Policy in connection with the claim.

52.     Pursuant to the terms of the Policy, Westchester is obligated to reimburse Mutti for all "Loss . . . caused by an 'insured event' during the 'policy period.'"

53.     Mutti's losses are covered under the Policy and are not excluded.

54.     Westchester disputes and denies that it has any contractual obligation to cover any of Mutti's losses under the Policy relative to the claim despite

8

acknowledging that it involves an "insured product" and a "voluntary recall" as those phrases are defined in the Policy.

55. Resolution of this controversy will establish Mutti's rights to recover under the Policy.

56. Mutti seeks a judicial declaration by this Court in accord with its contentions, declaring that there is coverage available for its losses up to the full limits of the Policy relative to the Claim, and any other relief this Court deems proper. Such a declaration would resolve the current controversy between Mutti and Westchester.

## PRAYER FOR RELIEF

**WHEREFORE**, Mutti prays for relief as follows:

## ON THE FIRST CAUSE OF ACTION

1. For damages in an amount to be determined at trial, including compensatory damages, consequential damages, and pre- and post-judgment interest;

2. For costs of suit herein; and

3. For such other, further, or different relief as may be deemed just and proper.

## ON THE SECOND CAUSE OF ACTION

1. Mutti requests that the Court enter judgment in its favor and against Westchester, declaring that Mutti is entitled to payment under the Policy as a result of its losses relative to the Claim;

9

    2.     Resolve in favor of Mutti any other disputes over terms and provisions of the Policy that arise in the course of this action.

    3.     For costs of suit herein; and

    4.     For such other, further, or different relief as may be deemed just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Mutti hereby demands a trial by jury on all issues so triable.

Dated:  New York, New York
        May 9, 2024           **PASICH LLP**

                         By:       /s/ Jeffrey L. Schulman
                             Jeffrey L. Schulman
                             286 Madison Avenue, 12th Floor
                             New York, New York 10017
                             Telephone:  (212) 686-5000
                             JSchulman@PasichLLP.com

                             *Attorneys for Plaintiff*

10

# EXHIBIT A

CHUBB®

# Chubb Recall Plus<sup>SM</sup>

# Consumable Products Policy

# *Westchester Surplus Lines*

Insurance Company

11575 Great Oaks Way
Suite 200
Alpharetta, GA 30022

# NOTICE

**POLICY NO.**   G74431860 001

**NAME OF INSURED:**   Mutti USA, Inc.

**ADDRESS:**   83 WOOSTER HTS STE 120, DANBURY, CT 06810-7550

We are pleased to enclose your policy for this account.

Please be advised that by binding this risk with the above referenced Surplus Lines Insurance Company, you agree that as the Surplus Lines Broker responsible for the placement of this insurance policy, it is your obligation to comply with all States Surplus Lines Laws including completion of any declarations/affidavits that must be filed as well as payment of any and all Surplus Lines taxes that must be remitted to the State(s). We will look to you for indemnification if controlling Surplus Lines Laws are violated by you as the Surplus Lines broker responsible for the placement.

You further confirm that any applicable state requirement concerning a diligent search for coverage by admitted carriers has been fulfilled in accordance with state law.

Thank you for this placement and your regulatory compliance.

Date:  02-18-2023

WSG-084 (05/11)



**Westchester Surplus Lines**
**Insurance Company**

Insured:Mutti USA, Inc.

Attached To Policy No.:  G74431860 001

Effective Date:  02-18-2023

---

## CONNECTICUT SURPLUS LINES NOTIFICATION

### NOTICE

**THIS IS A SURPLUS LINES POLICY AND IS NOT PROTECTED BY THE CONNECTICUT INSURANCE GUARANTY ASSOCIATION OR SUBJECT TO REVIEW BY THE CONNECTICUT INSURANCE DEPARTMENT. IT IS IMPORTANT THAT YOU READ AND UNDERSTAND THIS POLICY.**

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS NOTICE IS ATTACHED OTHER THAN AS STATED ABOVE.

FILED: NEW YORK COUNTY CLERK 05/09/2024 12:14 PM
NYSCEF DOC. NO. 2
INDEX NO. 652399/2024
RECEIVED NYSCEF: 05/09/2024



**Chubb Recall Plus℠**
**First Steps in a Crisis**

---

**POLICY NUMBER:** G74431860 001

This is your guide addressing how to access the **CHUBB RECALL PLUS℠** Hotline. Please use the information below to gain fast access to our Crisis Consultants on call to respond to your crisis needs. Also, remember that all claims correspondence should be notified through your normal broker channels.

### CHUBB RECALL PLUS HOTLINE

In the event of an incident that may be covered under the terms of the policy contact, the **CHUBB RECALL PLUS℠** Hotline available 24 hours a day, 7 days a week to advise, assist and respond to emergency situations involving **CHUBB RECALL PLUS℠** policy holders.

### CONTACT NUMBER

The 24-hour crisis response contact number for the **CHUBB RECALL PLUS℠** Hotline is:

<strong>1-800-508-4119</strong>

Please quote policy number if available. Callers will speak directly to an experienced consultant.

### OTHER ACTIONS TO BE TAKEN

In the event of an incident that may be covered under this policy, and whether or not the **CHUBB RECALL PLUS℠** Hotline has been contacted, the following Chubb representative mailbox is to be notified (via your broker) in order to be in compliance with the notice requirements of this policy:

<strong>Chubbclaimsfirstnotice@chubb.com</strong>

**All written communications should be addressed to:**

Chubb North American Claims
P.O. Box 1522
Scranton, PA. 18505-0554

*This information is intended as a guide to help you understand and maximize your benefits under your Chubb Recall Plus℠ product recall insurance policy. It does not alter the insurance policy contract, but rather is a summary only. Please refer to the policy for actual terms, conditions, exclusions and limitations. When you retain one of the consultants listed above for pre-incident consultation, the consultant will be working for you, not Chubb. Post-Incident consultation costs are a claim benefit under the policy. Chubb does not provide independent loss prevention consultation. Neither pre-incident nor post-incident consultation activities of the consultant are a substitute for advice from your own legal counsel or safety expert.*

*"Chubb" refers to Westchester Surplus Lines Insurance Company, Illinois Union Insurance Company or other Chubb insurance company affiliate named as the insurer in your Chubb Recall Plus policy.*

# CHUBB

**Chubb Recall Plus**<sup>SM</sup>
**Policy Intro**

**POLICY NUMBER:** G74431860 001

Your **CHUBB RECALL PLUS**<sup>SM</sup> product recall insurance policy is enclosed. Please read the policy in its entirety. If you have any questions, please contact your insurance broker.

## HOW DOES THE POLICY WORK?

This packet includes both your insurance policy and information concerning a crisis response service available to you on a pre- and post-incident basis. You must comply with the policy conditions and instructions set forth herein to be eligible for this and other policy benefits.

## WHO ARE THE CRISIS CONSULTANTS?

In an effort to support the ongoing risk management programs of our policyholders, Chubb actively maintains relationships with several of the leading global product recall consultants. These consultants provide expertise in product safety and regulatory compliance for companies that design, manufacture, distribute, retail, and import/export products into the global stream of commerce.

Utilizing the expertise of this consultant network, policyholders are afforded access to resources that aid in the program development necessary for successful preparation and deployment of a product recall. In addition to pre-event planning, this network continues to be available for vital post-event consultation during the lifecycle of an actual recall.

While this consultant network is comprised of industry leading product recall professionals, as the policyholder, you are not bound or obligated to the utilization of these aforementioned consultants in regard to post event services that may be required in response to a recall event.

## INITIAL CONSULTATION

**Chubb RECALL PLUS**<sup>SM</sup> entitles you to a free consultation with our consultants for the purpose of introducing the pre-incident services available through our consultant network.

## CHUBB  PRODUCT RECALL HOTLINE

This gives you your number to call in order to access Chubb's dedicated crisis consultants. Please make yourselves familiar with the **First Steps In A Crisis** page and ensure the person(s) who can initiate a recall have a copy of the hotline number.

---

*"Chubb" refers to Westchester Surplus Lines Insurance Company, Illinois Union Insurance Company or other Chubb insurance company affiliate named as the insurer in your Chubb Recall Plus*<sup>SM</sup> *policy.*

©Chubb. 2018. All rights reserved.



**Chubb Recall Plus**<sup>SM</sup>

Chubb Recall Plus<sup>SM</sup>
Insurance For Consumable Products

# DECLARATIONS

| POLICY NO: G74431860 001 | RENEWAL OF: New |
|---|---|

| Item 1. | **INSURING COMPANY** | **PRODUCER'S NAME & ADDRESS:** |
|---|---|---|
| | Westchester Surplus Lines Insurance Company | RSG SPECIALTY LLC<br>6455 SOUTH YOSEMITE STREET SUITE 100<br>GREENWOOD VILLAGE, CO 80111<br>Producer No. 81323W |

| Item 2. | **NAMED INSURED** | **MAILING ADDRESS** |
|---|---|---|
| | Mutti USA, Inc. | 83 WOOSTER HTS STE 120<br>DANBURY CT 06810-7550 |

| Item 3. | **POLICY PERIOD** | |
|---|---|---|
| | From: | 02/18/2023 | 12:01 A. M. Local Time At Named Insured's Address |
| | To: | 02/18/2024 | 12:01 A. M. Local Time At Named Insured's Address |

| Item 4. | **LIMITS OF INSURANCE** | |
|---|---|---|
| | A. EACH INSURED EVENT | $ 500,000 |
| | B. AGGREGATE OF ALL INSURED EVENTS | $ 500,000 |
| | CONSULTANT COSTS AS PER DEFINITION D ARE UNLIMITED | |

| Item 5. | **SUB-LIMITS** |
|---|---|
| | A. Not Applicable |

| Item 6. | **SELF INSURED RETENTION** | |
|---|---|---|
| | A. EACH INSURED EVENT | $ 10,000 |
| | NO SELF INSURED RETENTION APPLIES TO CONSULTANT COST AS PER DEFINITION D | |

| Item 7. | **CO-INSURANCE** | |
|---|---|---|
| | EACH INSURED EVENT | Not Applicable % |

| Item 8. | **PREMIUM** | |
|---|---|---|
| | PREMIUM: | $9,000 | ☒ FLAT(except for acquisitions) |
| | TRIA | $0 | ☐ ADJUSTABLE |
| | TOTAL AMOUNT DUE: | $9,000 | Estimated Annual Exposure: $ 20,000,000 in gross sales |

| Item 9. | **INSURED PRODUCTS** |
|---|---|
| | As per definition of "Insured Product(s)" in the policy form. |

| Item 10. | **ATTACHED FORMS** |
|---|---|
| | This Policy provides coverage as indicated on the Schedule Of Forms (REC-7530) attached. |

| Item 11. | **AUTHORIZATION INFORMATION** |
|---|---|
| | Authorized Representative: JOHN J. LUPICA, President |

# SCHEDULE OF FORMS

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Mutti USA, Inc. | | | REC75300113 |
| **Policy Symbol** | **Policy Number** | **Policy Period** | **Effective Date of Endorsement** |
| PRJ | G74431860 001 | 02-18-2023 to 02-18-2024 | 02-18-2023 |
| Issued By (Name of Insurance Company) | | | |
| Westchester Surplus Lines Insurance Company | | | |

| Form Title | Form No. |
|---|---|
| CHUBB RECALL PLUS CONSUMABLE PRODUCTS POLICY COVER LETTER | REC-7544 (01/13) |
| SURPLUS LINES BROKER NOTICE | WSG-084 (05/11) |
| SURPLUS LINES NOTIFICATION - CONNECTICUT | SL-17890 (01/15) |
| CHUBB RECALL PLUS FIRST STEPS IN A CRISIS | REC-7539 (02/19) |
| CHUBB RECALL PLUS POLICY INTRO | REC-7540 (01/18) |
| CHUBB RECALL PLUS INSURANCE FOR CONSUMABLE PRODUCTS DECLARATIONS | REC45375 (10/15) |
| SCHEDULE OF FORMS | REC-7530 (01/13) |
| ADVERSE PUBLICITY COVERAGE ENDORSEMENT | REC-45363 (11/22) |
| CONSEQUENTIAL DAMAGES ENDORSEMENT | REC-45364 (02/18) |
| EXTORTION COSTS ENDORSEMENT | REC-45366 (02/18) |
| EXTRA EXPENSE ENDORSEMENT | REC-45367 (08/18) |
| BUSINESS INTERRUPTION ENDORSEMENT | REC-45369 (02/18) |
| REPLACEMENT COSTS ENDORSEMENT | REC-45373 (02/18) |
| GLOBAL PROGRAM SOLUTIONS ENDORSEMENT | REC-7529 (01/13) |
| BRAND REHABILITATION EXPENSES ENDORSEMENT | REC-7533 (02/18) |
| SERVICE OF SUIT ENDORSEMENT | SL-34255a (01/16) |
| CHUBB PRODUCER COMPENSATION PRACTICES & POLICIES | ALL-20887 (10/06) |
| TRADE OR ECONOMIC SANCTIONS ENDORSEMENT | ALL-21101 (11/06) |
| U.S. TREASURY DEPARTMENTS' OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS | IL-P001 (01/04) |
| EXCLUSION OF CERTIFIED ACTS OF TERRORISM | REC-7505 (01/15) |
| POLICYHOLDER DISCLOSURE - NOTICE OF TERRORISM INSURANCE COVERAGE | TRIA24a (08/20) |
| SIGNATURE ENDORSEMENT | LD-5S23I (04/22) |
| Product Recall Consumable Products Policy Form | REC-45371 (10/22) |

**CHUBB®**

This is your CHUBB Recall Plus℠ Insurance Policy, providing insurance for covered product recalls of your consumable products. Certain provisions in this policy restrict coverage. Please read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the organization named in the Declarations as the Named Insured or other "insured". The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section II Definitions.

## SECTION I. INSURING AGREEMENT

In consideration of your payment of premium and in reliance upon your statements made in the application form for this policy, as well as the information and material you submitted as part of such application, we agree with you as follows:

We will reimburse you for:

1. "Loss" to which this insurance applies, in excess of the applicable "self-insured retention" and any applicable "co-insurance", up to the Limits of Insurance stated in the Declarations, that is caused by an "insured event" during the "policy period" and reported to us in compliance with the provisions of Condition R., (Notice of Loss); and

2. "Consultant Costs" to which this insurance applies.

## SECTION II. DEFINITIONS

A. "Adulterated" means:

   a) contaminated or impaired by a microbiological, chemical, or physical hazard; or
   b) mislabeled; or
   c) deliberately, maliciously, illegally or allegedly tampered or threatened to be tampered.

B. "Bodily injury" means physical injury, sickness, disease, or death sustained by a person.

C. "Consultant costs" means the fees and expenses incurred by you for the advisory services of the Crisis Consultants referred to in *First Steps in a* **Crisis** attached to this policy to assist you (1) in responding to events or incidents that have the potential to lead to an "insured event" or (2) in response to an actual "insured event". "Consultant costs" do not include any of the costs defined in Definition M.

D. "Co-insurance" means your percentage share of "loss", in excess of the applicable "self-insured retention", as stated in the Co-Insurance Section of the Declarations.

E. "Defense costs" means legal costs and other expenses incurred by or on behalf of the "insured" in connection with the defense of any actual or anticipated claim, including attorneys' fees and disbursement, court costs, premiums on attachment or appeal bonds, pre-judgment and post-judgment interest, expenses for experts and for investigation, adjustment, appraisal and settlement, excluding salaries, wages and benefits of your employees and administrative expenses incurred by you.

F. "Forensic Accounting Costs" means costs and expenses incurred for accounting and claims services billed by a third-party forensic accounting company for the purpose of assisting the "insured" with presentation of a "loss" to us.

   Any third-party forensic accounting company will be required to collaborate and cooperate with the claims representative(s) and/or independent adjusters designated by us.

©Chubb. 2022. All rights reserved.

Case 1:24-cv-04309-JHR   Document 1-1   Filed 06/06/24   Page 23 of 49

**CHUBB®**

G.  "Insured(s)" means:

1.  The organization identified as the Named Insured in the Declarations of this policy;
2.  Any subsidiary of the Named Insured and any other organization under the active management and control of the Named Insured as of the inception date of the policy, provided that such subsidiary or organization was made known to us prior to the inception date of the policy;
3.  If the Named Insured is a partnership, limited liability company or joint venture, its partners or members, but only with respect to the conduct of the Named Insured's business.

H.  "Insured Event" means your discovery of an "adulterated" "insured product(s)" that causes a voluntary or involuntary recall, market withdrawal, or "stock" recovery by or on behalf of its manufacturer, producer, processor, distributor, purchaser, retailer, wholesaler, importer, exporter, a regularly constituted federal, state or local regulatory or administrative body or user of the "insured product(s)", provided that the consumption, exposure to, or use of such "insured product(s)" has resulted in or would result in "bodily injury" or "property damage".

I.  "Insured product(s)", unless otherwise specified in the Declarations or in a document referred to in the Declarations, means:

Any good(s) or product(s), including any of their ingredients, components or packaging, provided such product(s):

a.  are in production by the "insured(s)";
b.  have been processed, manufactured, mixed, blended, compounded, packaged, handled or distributed by the "insured(s)" or by any contract manufacturer for the "insured(s); or
c.  are available for sale by the "insured(s)" or are sold on behalf of the "insured" by any distributor, wholesaler or retailer.

"Insured product(s)" does not include any newly introduced or newly developed products described below:

Any product(s) which are newly introduced or newly developed by the "insured(s)" after the inception of this policy without written acceptance by us.

Variations of existing products and/or new blends are not considered a newly developed product.

J.  "Loss" means "pre-incident costs", "recall costs", and "forensic accounting costs" that you have incurred directly and solely in connection with a covered "insured event".

K.  "Policy period" means the time between the inception date and the expiration date of this policy shown in the Declarations or any earlier termination date of the policy.

L.  "Pre-incident costs" means the costs incurred by you for chemical analysis and/or physical examination necessary to determine whether the "insured product(s)" has been "adulterated" or to determine what, if any, potential effect might result from the "adulterated" "insured product(s)"."Property damage" means physical damage to, destruction of or loss of use of tangible property other than the "insured product(s)".

M.  "Recall costs" means the following costs and expenses listed below incurred by you or your retailers or other third parties to recover, withdraw or recall such affected "insured product(s)" because of an "insured event":

1.  The cost of removing "adulterated" "insured product(s)" from stores, shelves, and other public access., or from "stock".
2.  The cost of newspaper, magazine or any printed advertising (whether electronic or otherwise), radio and television announcements or commercials, as well as the cost of correspondence regarding or concerning the recall.
3.  The cost of shipping the "adulterated" "insured product(s)" from any purchaser, distributor or user to the place or places that you designate.
4.  The cost to rent additional warehouse or storage space.
5.  The cost of hiring additional persons other than regular employees to assist with the recall of the "insured product(s)".

# CHUBB®

Chubb Recall Plus℠
Insurance For Consumable Products
Policy Form

6. Overtime paid to non-salaried employees and additional compensation paid to other than non-salaried employees for work devoted exclusively to the recall of the "insured product(s)".

7. Employees' travel, transportation and lodging expenses directly attributable to the recall of the "insured product(s)".

8. The cost of disposal of the "adulterated" "insured product(s)", to the extent that specific methods of disposal other than those usually employed for trash discarding or disposal, are required to avoid "bodily injury" or "property damage" as a result of such disposal.

9. Expenses incurred for the proper disposal of the unused packaging and point-of-purchase marketing material of "adulterated" "insured product(s)" if such packaging or material cannot reasonably be reused.

10. Retail slotting fees and cancellation fees for any advertising or promotional program which were scheduled but which were unable to be executed because of an "insured event".

11. Retail fees as required by contract not otherwise listed.

N. "Self-insured retention" means the amount stated in the Self-Insured Retention section of the Declarations.

O. "Stock" means that portion of the lot, batch, production run or other relevant unit of an "adulterated" "insured product(s)" that has not been released for sale or use.

P. "Sub-limit" means the maximum amount you are entitled to collect under a specified section of the Declarations.

Q. "Suit" means a civil proceeding seeking damages for "loss", other than "defense costs", arising out of an "insured event" to which this insurance applies. "Suit" includes arbitration or other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

R. "Terrorism" means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.

## SECTION III. EXCLUSIONS

A. This insurance does not apply to any "loss", cost or expense arising out of, based upon, attributable to or involving, directly or indirectly: Any "insured event" arising out of the natural gradual deterioration, decomposition or transformation of the chemical structure of any "insured" product(s)", including but not limited to any combination of or interaction among components or packaging, caused in whole or in part by the "insured product(s)" having passed its specified or reasonably expected expiration date for use or consumption.

B. Any willful, wanton, fraudulent, illegal, malicious, dishonest or criminal act by any director, officer, member, partner or trustee of any "insured".

C. Any use of materials or substances in the manufacturing process which have been banned or declared unsafe by any governmental entity.

D. Any "insured event" where "loss" arises out of a change in governmental regulations with respect to the safety of any "insured product(s)".

E. Any fees, fines or penalties (other than those listed in definition M(9) and M(10)) imposed by third parties, courts or governmental organizations or agencies.

F. Any "insured event" arising out of a failure by any party other than you to adhere to procedures prescribed by you regarding the storage, consumption or use of any "insured product(s)".

G. Any recall, market withdrawal or "stock" recovery that occurs after any of your directors, officers, partners or trustees had knowledge of (1) an "adulterated" "insured product(s)" or (2) circumstances that reasonably could have been expected to result in such "adulterated" "insured product(s)", and failed to take reasonable corrective action.

**CHUBB®**

Chubb Recall Plus<sup>SM</sup>
Insurance For Consumable Products
Policy Form

H.   Any pre-existing condition, circumstance or situation which any of your directors, officers, partners or trustees knew of or should have known of, prior to the inception of this policy, that caused or reasonably could have been expected to cause, lead to or result in an "insured event".

I.   Any third party liability claim or "suit" alleging "bodily injury" or "property damage".

J.   Any costs associated with the expense to design or redesign, engineer or re-engineer any "insured product(s)".

K.   Any claim made or "suit" brought by or on behalf of any "insured" against any other "insured".

L.   Any "consultant costs" incurred after we have determined and communicated to you that no "insured event" has occurred.

M.   Any "insured event" arising out of:

   1.   Bioengineering, genetic engineering or genetic modification of any "insured product(s)";
   2.   Hormone treatment of any "insured product(s)";
   3.   Transmissible Sponge form Encephalopathy (TSE);
   4.   Avian Flu
   5.   Any carcinogen
   6.   Ethylene Oxide, or
   7.   Per- and Polyfluoroalkyl Substances (PFAS), Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS)

N.   Any loss of or diminution in value of land, buildings, structures, fixtures; or lawns (including as a result of weather-related failures, pests or other cause); or contamination of livestock.

O.   Any actual or alleged act of "terrorism", unless the direct target of the "terrorism" is the "insured" or "insured product(s)".

P.   Any nuclear reaction or nuclear radiation or radioactive contamination (except a radioactive tampering specifically aimed at the "insured product(s)"), whether such reaction, radiation or contamination is controlled or uncontrolled or results from any act or condition incident to any of the foregoing.

Q.   War, invasion, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, or military or usurped power.

## SECTION IV. CONDITIONS

A.   APPRAISALS

If there is a covered "loss" concerning which you and we fail to agree as to the monetary value of the "loss", and we reject of your final statement of loss, the "loss will be submitted for an independent appraisal. Either party may make a written demand for an independent appraisal within sixty (60) days the rejection. Upon such demand, each party will select a competent and disinterested appraiser and notify the other party of the name of the appraiser selected within 20 days of such demand. These appraisers will first select a competent and disinterested umpire. If they cannot agree on the selection of an umpire within 15 days, such umpire will be selected by the then current President of the Chartered Institute of Loss Adjusters. The parties will submit their cases to the appraisers and the umpire within 30 days of the appointment of the umpire. A majority of the panel may make an award stating the amount of the covered "loss" along with details and itemization of the elements of the "loss". Each party will be responsible for payment of fees to its chosen appraiser and will share equally other expenses of the appraisal, including the umpire's fees. The appraisal is not binding and neither party will be deemed to have waived any rights by participating in the appraisal.

Case 1:24-cv-04309-JHR   Document 1-1   Filed 06/06/24   Page 26 of 49

**C H U B B**®

Chubb Recall Plus℠
Insurance For Consumable Products
Policy Form

B.  ASSIGNMENT

You may not assign this policy or any rights you may have under the policy without our prior written consent.

C.  AUTHORIZATION OF THE FIRST NAMED INSURED

You agree that the first named "insured" listed on the Schedule of Insureds is authorized to and does in fact act on behalf of any and all organizations qualifying as "insured(s)" with respect to any rights, duties and obligations they may have under the policy; and any and all such other "insured(s)" assign all rights and delegate all duties they may have under the policy to first named insured listed in the Declarations.

D.  CALCULATION OF LOSS

In the event of any covered "loss", you must provide to us a written request for payment as soon as practicable, accompanied by a computation of the "loss" setting forth in detail how the "loss" has been calculated and what assumptions have been made. You must provide to us any documentary evidence, including true copies of your books of account, bills, invoices, vouchers and other relevant documents that we or our representatives (including forensic accountants) may require. You must cooperate and afford our designates every assistance in their investigations, including reasonable access to any premises, personnel and documents we deem necessary for the purpose of the computation of "loss".

We will determine the amount of any "loss", taking into account any savings or recoveries or offsetting or make-up of "loss" which you have made or could reasonably have been expected to make to mitigate the loss and expedite your ability to resume operations. We will apply standard accounting principles as recognized by the relevant regulatory authorities in your home jurisdiction. If you do business in more than one jurisdiction the relevant accounting principles to be applied will be those of the jurisdiction in which the subsidiary, division or other organizational unit that sustained the "loss" is based.

Limits of insurance, premiums and other amounts as expressed in this policy, and "loss", and "consultant costs", payable under the policy are in U.S. currency. If we pay for "loss" or "consultant costs" calculated in currency other than U.S. currency, the rate of exchange will be based on the published wholesale exchange rate on the date we receive written notice of the "insured event". However, if there is no "insured event", the exchange rate for "consultant costs" will be based on the published wholesale exchange rate on the date the "consultant costs" are first submitted to us in writing.

Whether or not any partial payments have been made, you must submit to us a final written statement of loss including all items of "loss" upon request after an "insured event" becomes known to you.

Nothing in the condition will be deemed to amend or supersede the provisions of Condition R., Notice of Loss.

E.  CANCELLATION

You may cancel the policy by (a) the surrender of this policy to us or (b) by giving ten (10) days advance written notice to us, stating when thereafter such cancellation will be effective. We may cancel this policy by mailing or delivering to you, at your address stated in the Declarations, written notice stating when, not less than 60 days thereafter, the cancellation will be effective, except in the case of cancellation for non-payment of premium by you, in which case we will provide at least 10 days written notice. The mailing of such notice will be sufficient proof of notice and this policy will terminate at the date and hour specified in such notice.

If you cancel this policy, we will be entitled to retain or collect 110% of the pro-rata earned premium, provided that no "loss" has been previously reported to us. However, if any "loss" has been reported to us during the relevant "policy period" and prior to the date of cancellation, we will be entitled to retain 100% of the total policy premium, not adjusted on a pro-rata basis.

If we cancel this policy, we will be entitled to retain earned premium on a pro-rata basis. Payment or tender of any unearned premium by us will not be a condition precedent to the effectiveness of cancellation. Such

   ©Chubb. 2022. All rights reserved.

FILED: NEW YORK COUNTY CLERK 05/09/2024 12:14 PM
NYSCEF DOC. NO. 1

Case 1:24-cv-04309-JHR   Document 1-1   Filed 06/06/24   Page 27 of 49

payment will be made as soon as practicable, but any delay on our part will not extend the policy beyond the original cancellation date.

## F. CHANGES:

This policy contains all the agreements between you and us concerning this insurance. Notice to any of our representatives or knowledge possessed by any of our representative(s) or by any other person will not constitute or operate as a waiver or a change in any part of the policy or prevent us from asserting any right under the terms of this policy, nor can the terms of this policy be waived or changed unless agreed to in writing by us in an endorsement annexed to the policy.

## G. CHOICE OF LAW AND FORUM

The construction, validity and performance under this policy and any dispute arising from this policy or any claim under this policy will be governed by the laws of the State of New York. You and we hereby expressly agree that any and all disputes regarding any claim or "loss" will be brought and litigated in the State of New York.

## H. CO-INSURANCE:

You will bear the "co-insurance" amount stated in the Declarations for "loss" in excess of and in addition to the "self-insured" retention applicable to each "insured event". The "co-insurance" amount will be calculated by multiplying the covered "loss" in excess of the "self-insured retention" by the "co-insurance amount". We will pay covered "loss" in excess of the "self-insured retention" subject to the Limit of Liability stated in the Declarations after deduction of the "co-insurance" amount from the "loss". "Consultant costs" are not subject to "co-insurance".

## I. CONCEALMENT, MISREPRESENTATION, NON-DISCLOSURE, OR FRAUD

Without prejudice to our other rights, however arising, this policy will be null and void if any "insured" engages in concealment, misrepresentation, non-disclosure, or fraud with respect to any fact that is material to this insurance or the procurement thereof; the "insured product(s)", the "insured's" interest in the "insured product(s)", any "insured event", or any "loss" or claim under this policy.

## J. COOPERATION

You agree to cooperate with us in all matters relating to this policy. This may include, but is not limited to, providing information and documents, attending hearings and trials, securing and giving evidence, obtaining the attendance of witnesses, assisting in effecting settlements, and in conducting litigation, arbitration, or other proceedings.

## K. DUE DILIGENCE

You agree to exercise due diligence to take all reasonable and practical steps to avoid any happening or circumstances giving rise to an "insured event" and to make all reasonable efforts to mitigate any "loss" occurring as a result of an "insured event".

## L. EXCESS INSURANCE

You may purchase other insurance over the Limit of Liability set forth in this policy without prejudice to this policy, provided that we are notified in writing of the details of such other excess insurance at the time such other insurance is acquired. The existence of such other insurance, if any, will not reduce our liability under this policy.

 ©Chubb. 2022. All rights reserved.

FILED: NEW YORK COUNTY CLERK 05/09/2024 12:14 PM INDEX NO. 652399/2024
NYSCEF DOC. NO. 4 Case 1:24-cv-04309-JHR Document 1-1 Filed 06/06/24 Page 28 of 49 RECEIVED NYSCEF: 05/09/2024

M. FRAUDULENT CLAIMS

If any material fact concerning a claim, an "insured event" or item of "loss" is in any respect fraudulent or intentionally concealed or misrepresented, this policy will become void and you will not be entitled to any coverage or proceeds.

N. INSPECTION AND AUDIT

We may examine and audit your business documents relating to the subject matter of this insurance until three years after this policy has expired or has been cancelled. Any premium due for exposures which existed but were not reported will be determined through audit by us and you will be liable for such audit premium.

O. LIMITS OF INSURANCE

The Limits of Insurance shown in the Declarations of this policy are the most we will pay for any and all "loss" regardless of the number of "insured events", "insured product(s)" or "insured(s)". All "loss" resulting from and arising from the same, continuous, related or repeated conditions or incidents will be treated as arising out of one "insured event". In no event will any "loss" claimed and paid under one "insured event" be recoverable under any other "insured event". "Consultant costs" are in addition to and not subject to the Limits of Insurance.

P. NEW EXPOSURES AFTER INCEPTION

If, after the inception of this policy, you newly acquire or form, whether by asset acquisition, stock acquisition, consolidation or merger, formation or any other means, an organization whose gross revenues are in excess of 10% of your gross revenues as of the effective date of the acquisition or formation, you must give us written notice within ninety (90) days of such effective date.

We reserve the right, to accept or decline the additional exposure created by the acquisition or formation, at our discretion. If we decline to accept the new exposure, the acquired or formed organization will be covered under this policy only until we notify you in writing that we have declined to accept the new exposure. In the event we agree to insure the new exposure, you agree to pay to us, promptly upon invoice, additional premium as billed. We will calculate the premium due from the date of acquisition or formation on a pro-rata basis for the remainder of the policy period.

This insurance does not apply to any "loss" arising out of the newly acquired or formed organization if you, at the time you gave notice us of the acquisition or formation, knew or reasonably could have known of the "insured event" out of which the "loss" arose.

Q. NON-ACCUMULATION OF LIABILITY

Regardless of the number of years this policy may continue in force, and of the number or amount of premiums which may be payable or paid, or of any other circumstances whatsoever, our aggregate liability will not be cumulative from year to year or period to period. When there is more than one "insured", our aggregate Limit of Liability for "loss" sustained by any or all such "insured(s)" will not exceed the amount for which we would be liable if all "loss" were sustained by any one of them.

**CHUBB®**

Chubb Recall Plus℠
Insurance For Consumable Products
Policy Form

R. NOTICE OF LOSS

In the event of an "insured event" that may be covered under the terms of this policy, you must, within 72 hours or as soon as practical, contact the 24-hour hotline described in *First Steps in a Crisis* attached to the policy, and provide written notice to us or any authorized representative we designate, containing particulars sufficient to identify the "insured" and information with respect to the time, place and circumstances of the "adulteration" and estimated "loss", if any. SUCH WRITTEN NOTICE MUST BE PROVIDED TO THE EMAIL ADDRESS LISTED ON THE *FIRST STEPS IN A CRISIS* PAGE OF THIS POLICY AS SOON AS POSSIBLE BUT IN NO EVENT LATER THAN 60 DAYS AFTER THE "INSURED EVENT".

You must promptly take all reasonable steps to minimize any expense or damages involved, cooperate with us and, at our request, assist us in enforcing any right of contribution or indemnity against any person or organization other than a named "insured" under this policy, who may be liable to you.

S. NOTICES

Except as indicated to the contrary herein, all notices, applications, demands or requests provided for in this policy will be in writing and will be given to or made upon either party at its address shown in the Declarations.

T. OTHER INSURANCE

This insurance is excess of and will not contribute with any other insurance of any kind whatsoever, whether primary, excess, contingent or on any other basis, except such policies that are written specifically to apply in excess of this policy.

Any other insurance available to you will not reduce or exhaust the 'self-insured retention' or 'co-insurance,' which must be borne by you and remain uninsured."

U. SALVAGE

Any salvage or other recovery, after expenses incurred in salvage or recovery is deducted, will accrue entirely to our benefit until any sums we have paid been recovered. In case of damage to property bearing a brand or trademark, or which in any way carries or implies the guarantee or the responsibility of the "insured", the salvage value of such damaged property will be determined after removal in the customary manner of all such brands or trademarks or other identifying characteristics, the costs of which will be borne by you.

Your good will and public image will be considered in determining whether any "insured product(s)" should be involved in salvage recovery. You agree not to unreasonably restrict our right to salvage. You will have full right to the possession of all goods involved in any "insured event' and will retain control of all damaged goods. You may not under any circumstances abandon any property to us.

V. SELF INSURED RETENTION

The self-insured retention stated in the Declarations will apply separately to each and every "insured event'. The "self-insured retention" is to be borne by you and remain uninsured. "Consultant costs" are not subject to a self-insured retention.

W. SEVERABILITY, CONSTRUCTION AND CONFORMANCE TO STATUTE

If any provision contained in this policy is, for any reason, held to be invalid, illegal or unenforceable in any respect, it is deemed to be severed and to have no effect on any other valid legal and enforceable provision of this policy. If any provision is or may be construed as being invalid, illegal or unenforceable for any reason, it will be construed by limiting it so as to be valid, legal, and enforceable to the extent compatible with applicable law. Any provisions which are in conflict with the statutes or regulations of the state or country in which the policy is issued are amended to conform to such statutes or regulations.

REC-45371 (10-22)                    ©Chubb. 2022. All rights reserved.                    Page 8 of 9

X. SUBROGATION

In the event of any payment under the policy, we will be subrogated to the extent of such payment to all the "insured's" rights of recovery. In such case, you agree to execute all documents required and will do everything necessary to secure and preserve such rights including the execution of such documents necessary to enable us to bring "suit" in your name.

Y. SUITS, ACTIONS OR PROCEEDINGS AGAINST US

No "suit", action, or proceeding for recovery of any "loss" under this policy will be sustainable in any court of law, equity, or other tribunal unless all the requirements of this policy are complied with and are commenced within 24 months after inception of the "Insured Event".

Z. TERRITORY

This policy applies to an "insured event" anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

©Chubb. 2022. All rights reserved.

## ADVERSE PUBLICITY COVERAGE ENDORSEMENT

| Named Insured<br>Mutti USA, Inc. | | | Endorsement Number<br>REC453631122 |
|---|---|---|---|
| Policy Symbol<br>PRJ | Policy Number<br>G74431860 001 | Policy Period<br>02-18-2023        To        02-18-2024 | Effective Date of Endorsement<br>02-18-2023 |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CHUBB RECALL PLUS**[SM] **INSURANCE FOR CONSUMABLE PRODUCTS**

The policy is amended as follows:

I.   The following is added to the definition of "Insured event":

"Insured event" includes "adverse publicity".

II.   The following definition is added to the policy:

"Adverse publicity" means the naming of the "insured product(s)" in any local, regional or national media, including, but not limited to any governmental publication, during the "policy period", with the implication that the "insured product(s)" is "adulterated" and that the consumption, exposure to, or use of such "insured product(s)" has resulted in or would result in "bodily injury" or "property damage".

III.   The following exclusion is added to the policy:

This insurance does not apply to any "adverse publicity" generated by any of your directors, officers or trustees.

All other terms and conditions of the policy remain unchanged.

©Chubb. 2022. All rights reserved.


*Westchester*
A Chubb Company

## CONSEQUENTIAL DAMAGES ENDORSEMENT

| Named Insured Mutti USA, Inc. | | | Endorsement Number REC453640218 |
|---|---|---|---|
| Policy Symbol PRJ | Policy Number G74431860 001 | Policy Period 02-18-2023 to 02-18-2024 | Effective Date of Endorsement 02-18-2023 |
| Issued By (Name of Insurance Company) Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CHUBB RECALL PLUS[SM] POLICY FOR CONSUMER GOODS**

**CHUBB RECALL PLUS[SM] POLICY FOR CONSUMABLE PRODUCTS**

The policy is amended as follows:

I.  The following is added to the definition of "Loss":

"Loss" includes "consequential damages" and "defense costs'.

II.  The following definition is added to the policy:

"Consequential damages" means the costs, expenses and / or loss of profit a "customer" has incurred or suffered caused solely and directly in connection with a covered "insured event" and for which you are legally obligated to reimburse or pay that "customer".

Consequential damages do not include:

a)  Any fines, fees, penalties, punitive and / or exemplary damages
b)  Any loss or expenses recoverable elsewhere in this policy.

"Customer" means the party or parties to or with whom you have:

1.  directly contracted; or
2.  indirectly supplied your "insured product(s)"

All other terms and conditions of the policy remain unchanged.



**Westchester**
A Chubb Company

# EXTORTION COSTS ENDORSEMENT

| Named Insured<br>Mutti USA, Inc. | | | Endorsement Number<br>REC453660218 |
|---|---|---|---|
| Policy Symbol<br>PRJ | Policy Number<br>G74431860 001 | Policy Period<br>02-18-2023 to 02-18-2024 | Effective Date of Endorsement<br>02-18-2023 |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

## CHUBB RECALL PLUS℠ INSURANCE FOR CONSUMABLE PRODUCTS

The policy is amended as follows:

I.   The following is added to the definition of "insured event";

"Insured event" includes "product extortion"

The following is added to the definition of "Loss":

"Loss" includes "extortion costs".

II. The following definitions are added to the policy:

"Extortion costs" means:

1.   "Extortion monies" paid by you in direct response to a "product extortion" demand.

2.   "Extortion monies" lost due to the destruction, disappearance, confiscation or wrongful appropriation of "extortion monies" while being handled or conveyed for delivery by anyone who is authorized by you to have custody thereof; provided that the "product extortion" demand which gave rise to the delivery is covered by this insurance.

3.   Expenses or fees which are incurred and paid by you solely as a direct result of a "product extortion" demand, including the following:

a.   The amount paid by you as a "reward" to an "informant" for information relevant to a specific "product extortion" demand. However, no "reward" will be paid to any director, officer, trustee, member or partner of any "insured" or to any employee, agent or other representative of any "insured" holding similar responsibilities;
b.   Interest due on any loan made to you by a financial institution for the purpose of paying "extortion monies";
c.   Reasonable costs of travel and accommodations incurred by you or on your behalf while attempting to negotiate a "product extortion" demand;
d.   Reasonable increased costs of security due to a "product extortion" demand including hiring of security guards, hiring of armored vehicles, and overtime pay to existing security staff for a period of up to 90 days, provided however that a security consultant approved by us has specifically recommended such increased security measures.

"Extortion Monies" means any monies paid by the "insured(s)" or lost in transit subsequent to a "product extortion" demand. For the purpose of this insurance policy, the term monies includes cash, monetary instruments, bullion or the fair market value of any securities, tangible property or services.

"Informant" means any person providing information not otherwise obtainable, in return for a "reward" offered by you.

©Chubb. 2018. All rights reserved.

*Westchester*

A Chubb Company

"Product extortion" means any threat or related series of threats to cause an "insured product(s)" to become "adulterated" communicated to the "insured(s)" for the purpose of demanding "extortion monies".

"Reward" means monies paid for information which results in *"extortion costs"* mitigation.

All other terms and conditions of the policy remain unchanged.

## Westchester
A Chubb Company

## EXTRA EXPENSE ENDORSEMENT

| Named Insured<br>Mutti USA, Inc. | | | Endorsement Number<br>REC453670818 |
|---|---|---|---|
| Policy Symbol<br>PRJ | Policy Number<br>G74431860 001 | Policy Period<br>02-18-2023 to 02-18-2024 | Effective Date of Endorsement<br>02-18-2023 |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### CHUBB RECALL PLUS℠ POLICY FOR COMPONENT PARTS
### CHUBB RECALL PLUS℠ POLICY FOR CONSUMER GOODS
### CHUBB RECALL PLUS℠ POLICY FOR CONSUMABLE PRODUCTS

The policy is amended as follows:

I.   The following is added to the definition of "Loss":

"Loss" includes "extra expense".

II.   The following definitions are added to the policy:

"Business interruption" means your actual loss of "business income" you sustained solely and directly in connection with a covered "insured event".

"Business income" means your sales revenue projected prior to the happening of an "insured event", but which has been lost after the decrease in sales attributable to and caused directly by an "insured event", less:

1.   the variable costs that would have been incurred during the same period, but which have been saved as a result of not making those sales (including the cost of raw materials and all other saved costs); and
2.   the increased sales of another "insured product(s)" within the same product line as the affected "insured product(s)" claimed in the "loss" as a result of an "insured event".

"Extra expense" means the reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no "loss" resulting from an "insured event" to:

1.   Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
2.   Minimize the "suspension" of business if you cannot continue "operations".
3.   Maintain employment of your work force

Extra Expense does not include:

a)   Any "business interruption"
b)   Any cost to repair, restore or replace the "insured product(s)"
c)   Any expenses recoverable elsewhere in this policy.

REC-45367 08-18        ©Chubb. 2018. All rights reserved.        Page 1 of 2

*Westchester*

A Chubb Company

"Suspension" means a slowdown, cessation or shut down of your business activities arising out of a covered "insured event".

"Period of restoration" means the period from the time of "suspension" when either:

a)   the premises have been made ready for operations under the same or equivalent physical and operating conditions that existed prior to the "insured event"; or
b)   normal operations resume,

whichever comes first.


All other terms and conditions of the policy remain unchanged.



## *Westchester*
A Chubb Company

# BUSINESS INTERRUPTION ENDORSEMENT

| Named Insured<br>Mutti USA, Inc. | | | Endorsement Number<br>REC453690218 |
|---|---|---|---|
| Policy Symbol<br>PRJ | Policy Number<br>G74431860 001 | Policy Period<br>02-18-2023 to 02-18-2024 | Effective Date of Endorsement<br>02-18-2023 |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

## CHUBB RECALL PLUS℠ POLICY FOR COMPONENT PARTS
## CHUBB RECALL PLUS℠ POLICY FOR CONSUMER GOODS
## CHUBB RECALL PLUS℠ POLICY FOR CONSUMABLE PRODUCTS

The policy is amended as follows:

I.   The following is added to the definition of "Loss":

"Loss" includes "business interruption".

II.  The following definitions are added to the policy:

"Business interruption" means your actual loss of "business income" you sustained solely and directly in connection with a covered "insured event".

"Business income" means your sales revenue projected prior to the happening of an "insured event", but which has been lost after the decrease in sales attributable to and caused directly by an "insured event", less:

1.  the variable costs that would have been incurred during the same period, but which have been saved as a result of not making those sales (including the cost of raw materials and all other saved costs); and
2.  the increased sales of another "insured product(s)" within the same product line as the affected "insured product(s)" claimed in the "loss" as a result of an "insured event".

III. Condition D. (Calculation of Loss) is deleted and replaced with the following:

D.  CALCULATION OF LOSS:

In the event of any covered "loss", you must provide to us a written request for payment as soon as practicable, accompanied by a computation of the "loss" setting forth in detail how the "loss" has been calculated and what assumptions have been made. You must provide to us any documentary evidence, including true copies of your books of account, bills, invoices, vouchers and other relevant documents that we or our representatives (including forensic accountants) may require. You must cooperate and afford our designates every assistance in their investigations, including reasonable access to any premises, personnel and documents we deem necessary for the purpose of the computation of "loss".

We will determine the amount of any "loss", taking into account any savings or recoveries or offsetting or make-up of "loss" which you have made or could reasonably have been expected to make and your ability to resume operations. We will apply standard accounting principles as recognized by the relevant regulatory authorities in your home jurisdiction. If you do business in more than one jurisdiction the relevant accounting principles to be applied will be those of the jurisdiction in which the subsidiary, division or other organizational unit that sustained the "loss" is based.

REC-45369 02-18                    ©Chubb. 2018. All rights reserved.                    Page 1 of 2

*Westchester*

A Chubb Company

We will calculate "business income" based on an analysis of the profits generated by the affected "insured product(s)" and other "insured product(s)" which lost sales as a direct result of the "insured event", during each month of the 12 months prior to the "insured event" and taking into account:

1.  The future profitability of such product(s) had no "insured event" occurred; and
2.  All material changes in the market conditions of any nature whatsoever that would have affected the future marketing of and profits generated by the "insured product(s)" or other affected "insured product(s)".

Limits of insurance, premiums and other amounts as expressed in this policy, and "loss" and "consultant costs" payable under the policy are in U.S. currency. If we pay for "loss" or "consultant costs" calculated in currency other than U.S. currency,, the rate of exchange will be based on the published wholesale exchange rate on the date we receive written notice of the "insured event". However, if there is no "insured event", the exchange rate for "consultant costs" will be based on the published wholesale exchange rate on the date the "consultant costs' are first submitted to us in writing.

Whether or not any partial payments have been made, you must submit to us a final written statement of loss including all items of "loss" upon request after an "insured event" becomes known to you

Nothing in the condition will be deemed to amend or supersede the provisions of Condition R. (Notice of Loss).

All other terms and conditions of the policy remain unchanged.



*Westchester*
A Chubb Company

## REPLACEMENT COSTS ENDORSEMENT

| Named Insured<br>Mutti USA, Inc. | | | Endorsement Number<br>REC453730218 |
|---|---|---|---|
| Policy Symbol<br>PRJ | Policy Number<br>G74431860 001 | Policy Period<br>02-18-2023 to 02-18-2024 | Effective Date of Endorsement<br>02-18-2023 |
| Issued By (Name of Insurance Company)<br>Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

### CHUBB RECALL PLUS℠ POLICY FOR CONSUMABLE PRODUCTS

The policy is amended as follows:

I. The following is added to the definition of "Loss":

"Loss" includes "replacement costs".

II. The following definition is added to the policy:

"Replacement costs" means:

1. The total amount of refunds you give to purchasers for the "adulterated" "insured product(s)", not to exceed the initial purchasing price of the goods sold.

2. The direct costs to repair the ""adulterated"" "insured product(s)", including the cost to repair unsold stock,

3. The direct cost to produce or acquire a like replacement product if the "adulterated" "insured product(s)" cannot be repaired.

4. The direct cost of unsold finished stock if the "adulterated" "insured product(s)" cannot be repaired, reconditioned, decontaminated or otherwise treated so as to render it marketable,.

5. The direct cost related to the removal and installation of the repaired or replaced "adulterated" "insured product(s)".

6. The actual cost to redistribute any restored, repaired or replaced "adulterated" "insured product(s)".

All other terms and conditions of the policy remain unchanged.

REC-45373 02-18
©Chubb. 2018. All rights reserved.

## GLOBAL PROGRAM SOLUTIONS ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Mutti USA, Inc. | | | REC75290113 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| PRJ | G74431860 001 | 02-18-2023 to 02-18-2024 | 02-18-2023 |
| Issued By (Name of Insurance Company) | | | |
| Westchester Surplus Lines Insurance Company | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:

**CHUBB RECALL PLUS℠ POLICY FOR COMPONENT PARTS**
**CHUBB RECALL PLUS℠ POLICY FOR CONSUMER GOODS**
**CHUBB RECALL PLUS℠ POLICY FOR CONSUMABLE PRODUCTS**

The policy is amended as follows:

**FOREIGN ENTITY AND FOREIGN INSURED EVENT PROVISIONS**

**A.     Insuring Agreement**

1.     This endorsement applies only when a "foreign entity" has a "foreign insured event".   In the event of a "foreign insured event", we will reimburse the "First Named Insured" for the "foreign insured event" in accordance with this endorsement.  This endorsement provides the only coverage under this policy for a "foreign insured event".

2.     Nothing in this endorsement is intended to, nor does it, extend coverage beyond the terms, conditions, exclusions and other limitations of this policy.

**B.     Who Is An Insured**

The "First Named Insured" is the only person or organization insured under this endorsement. When this endorsement applies, this policy is amended to provide that no "foreign entity" is an "insured" under this policy.

**C.     Limits of Insurance**

The insurance provided by this endorsement is subject to all applicable limits stated in the Declarations, or elsewhere in, this policy, including any limits or sub-limits of insurance (collectively, "limits").  Any "foreign insured event" for which we pay reimbursement will erode and be counted against such limits.  Such limits apply on the same basis (including co-insurance) with respect to the "First Named Insured" as would apply if the "foreign entity" was an "insured" under this policy.

**D.     Additional Definitions**

The following definitions are added to the policy:

"First Named Insured" means the first Named Insured shown on the Declarations and must be a United States-domiciled entity.

"Foreign entity" means an entity which would be a Named Insured or "insured" under this Policy, but for the fact that its principal place of business or statutory domicile is located in a jurisdiction where we are is not "licensed".

©Chubb. 2016. All rights reserved.

"Foreign insured event" means an "insured event" that would be covered under the terms and conditions of this policy if the "foreign entity" was insured under this policy.

"License" or "licensed" means, with respect to any country (excluding the U.S. or any of its jurisdictions), permitted in accordance with applicable law to conduct the business of insurance in such country.

**E.    Additional Conditions**

The following conditions are added to the policy:

"FOREIGN INSURED EVENT" CONDITIONS

The following conditions apply to this endorsement.  If there is a conflict between one or more of the following conditions and the other provisions in the policy, then the following conditions will control:

a.   Matters known by the "foreign entity" will be deemed known by the "First Named Insured".

b.   The "First Named Insured" will, when directed by us:

   (1)   retain in its own name, but at our expense, a mutually agreed loss adjusting expert ("loss adjuster") to investigate and adjust the "foreign insured event";

   (2)   where permitted by applicable law, grant us the full right to collaborate with such loss adjuster;

   (3)   grant us full access to any records produced by such loss adjuster; and

   (4)   where permitted by applicable law, obtain the right to control the investigation and adjustment of the "foreign insured event", using experts approved by us, including access to books, records, bills, invoices, vouchers and other information.

   However, we will not require the "First Named Insured" to retain a separate loss adjusting expert if such adjuster has been designated in another provision of this policy.

c.   The "First Named Insured" will ensure that the "foreign entity" enforces any right to recovery from any third party with respect to the "foreign insured event" or assigns to the "First Named" Insured any cause of action that the "foreign entity" may have against any third party arising out of the "foreign insured event". In the event of any recovery by the "foreign entity" for a loss paid by the Company to the First Named Insured, the recovery shall be applied as per the subrogation clause of this Policy.

d..  Payment to the "First Named Insured" of "loss" for any "foreign insured event" will, to the extent of such payment, discharge the Company from any liability to any other entity, including the "foreign entity" whether or not named as an "insured" in this policy.

All other terms and conditions of this policy remain unchanged.

REC-7529 (01/13)                                    ©Chubb. 2016. All rights reserved.                                    Page 2 of 2

FILED: NEW YORK COUNTY CLERK 05/09/2024 12:14 PM INDEX NO. 652399/2024
NYSCEF DOC. NO. 2    Case 1:24-cv-04309-JHR   Document 1-1   Filed 06/06/24   Page 42 of 49   RECEIVED NYSCEF: 05/09/2024



*Westchester*
A Chubb Company

## BRAND REHABILITATION EXPENSES ENDORSEMENT

| Named Insured Mutti USA, Inc. | | | Endorsement Number REC75330218 |
|---|---|---|---|
| Policy Symbol PRJ | Policy Number G74431860 001 | Policy Period 02-18-2023 to 02-18-2024 | Effective Date of Endorsement 02-18-2023 |
| Issued By (Name of Insurance Company) Westchester Surplus Lines Insurance Company | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**

**CHUBB RECALL PLUS℠ POLICY FOR COMPONENT PARTS**
**CHUBB RECALL PLUS℠ POLICY FOR CONSUMER GOODS**
**CHUBB RECALL PLUS℠ POLICY FOR CONSUMABLE PRODUCTS**

The policy is amended as follows:

 I. The following is added to the definition of "Loss":

  "Loss" includes "brand rehabilitation expenses".

 II. The following definition is added to the policy:

  "Brand rehabilitation expenses" means the advertising, marketing and public relations expenses incurred by you as a direct result of an "insured event" to re-establish the "insured product(s)" to the projected level of sales or market share anticipated prior to the "insured event".

All other terms and conditions of the policy remain unchanged.

# SERVICE OF SUIT ENDORSEMENT

| Named Insured<br>**Mutti USA, Inc.** | | | Endorsement Number<br>**SL34255a0116** |
|---|---|---|---|
| Policy Symbol<br>**PRJ** | Policy Number<br>**G74431860 001** | Policy Period<br>**02-18-2023 to 02-18-2024** | Effective Date of Endorsement<br>**02-18-2023** |
| Issued By (Name of Insurance Company)<br>**Westchester Surplus Lines Insurance Company** | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

> Mr. Paul Bech, Esq., Associate General Counsel
> Chubb
> 436 Walnut Street
> Philadelphia, PA 19106-3703

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal. However, nothing in this endorsement constitutes a waiver of the company's right to: remove an action to a United States District Court, seek a transfer of a case to another court, or to enforce policy provisions governing choice of law or venue selection, as may be permitted by the laws of the United States, or of any state in the United States.

The law of some jurisdictions of the United States of America requires that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as the company's agent for service of process. In these jurisdictions, the company designates the Director of Insurance as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Director of Insurance to mail process received on the company's behalf to the company person named above.

If the insured is a resident of Canada, the insured may also serve suit upon the company by serving the government official designated by the law of the insured's province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

SL-34255a (01/16)



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

ALL-20887 (10/06)

# TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | Endorsement Number |
|---|---|
| Mutti USA, Inc. | ALL211011106 |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| PRJ | G74431860 001 | 02-18-2023   To  02-18-2024 | 02-18-2023 |

| Issued By (Name of Insurance Company) |
|---|
| Westchester Surplus Lines Insurance Company |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

Authorized Agent

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**CHUBB RECALL PLUS<sup>SM</sup> INSURANCE FOR COMPONENT PARTS POLICY FORM**

**CHUBB RECALL PLUS<sup>SM</sup> INSURANCE FOR CONSUMABLE PRODUCTS POLICY FORM**

**CHUBB RECALL PLUS<sup>SM</sup> INSURANCE FOR CONSUMER GOODS POLICY FORM**

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Loss" or "Consultant Costs" that are caused by or results from an "insured event" arising directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for "Loss" or "Consultant Costs" that is otherwise excluded under this Policy

REC-7505 (01/15)

Includes copyrighted material of Insurance Services Office, Inc., with its permission
©Chubb. 2016. All rights reserved.

**CHUBB®**

| | |
|---|---|
| Westchester Surplus Lines Insurance Company | |
| **Insurance Company** | |
| Mutti USA, Inc. | |
| **Policyholder** | |
| G74431860 001 | |
| **Policy Number** | |
| RSG SPECIALTY LLC | |
| **Broker/Producer** | |

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You were notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury---in consultation with the Secretary of Homeland Security, and the Attorney General of the United States---to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY YOUR POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 80% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM THAT WOULD BE CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.**

**YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.**

You elected ***NOT*** to purchase terrorism coverage under the Act at the price indicated. ACCORDINGLY, WE WILL ***NOT*** PROVIDE THIS COVERAGE AND YOU DO NOT OWE THE ADDITIONAL PREMIUM FOR THAT COVERAGE INDICATED BELOW.

> Terrorism coverage described by the Act under your policy was made available to you for additional premium in the amount of $450, however you elected to decline such coverage.

TRIA24a (08/20)

# CHUBB®

## SIGNATURES

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| Mutti USA, Inc. | | | LD5S23l0422 |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| PRJ | G74431860 001 | 02-18-2023 **to** 02-18-2024 | 02-18-2023 |
| Issued By (Name of Insurance Company) | | | |
| Westchester Surplus Lines Insurance Company | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)
Royal Centre Two, 11575 Great Oaks Way, Suite 200, Alpharetta, GA 30022

BRANDON PEENE, Secretary

JOHN J. LUPICA, President

Authorized Representative

LD-5S23l (04/22)